CARROLL, DONALD K., Chief Judge.
The plaintiff in a suit for a declaratory decree has appealed from an adverse summary decree entered by the Circuit Court for Marion County determining its liability under the terms of a liability insurance policy issued by it.
A consideration of the points raised in this appeal requires a construction and application of several provisions of the automobile liability policy issued by the plaintiff.
In that policy the plaintiff agreed to pay all sums which the insured, Mrs. Evelyn Edgerly, should become legally obligated to pay because of personal injuries and property damage “arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile * * *650 With respect to a “non-owned automobile; ” the named insured and “any relative” are the insureds under the policy, provided that the actual use of the automobile is with the permission of the owner. “Relative” is defined to be “a relative of the named insured who is a resident of the same household.” The policy defines “non-owned automobile” to mean “an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile.”
The facts giving rise to this litigation are as follows:
On July 3, 1959, the plaintiff issued the said liability insurance policy to the defendant Mrs. Edgerly. While the policy was in force and effect, on January 16, I960, a collision occurred involving a 1956 Ford automobile being driven by the son of Mrs. Edgerly, with her daughter, Mrs. Doyle E. Cone, as a passenger in the car. The said automobile at the time was owned by the daughter’s husband, Doyle E. Cone, who was then in the military service. As a result of this collision, an action was brought in Circuit Court against Mrs. Edgerly and her son. Mrs. Edgerly then notified the plaintiff that it would be responsible for the defense of the action under the terms of the policy in question.
Prior to the collision, on November 1, 1959, Doyle E. Cone brought his wife and their two minor daughters to the home of Mrs. Edgerly, where he left them to remain temporarily with her until he could finish a portion of his overseas duty and provide for them a place where they could join him. His family and Mrs. Edgerly’s family ate at the same table and shared the cost of the food and the household labors, but the two families, in the words of the chancellor in his findings, “maintained .their separate organizations and identities.”
The chancellor found that the said son of Mrs. Edgerly, was her “relative” within the meaning of that term in the policy “providing he was, at the time of the accident, operating a non-owned automobile as defined in the policy.” The chancellor further found that the said automobile was furnished for the regular use of Mrs. Cone, but that she was not a “resident” of Mrs. Edgerly’s household within the meaning of the policy. Through this line of reasoning the chancellor reached his conclusion that the said son, a “relative” of Mrs. Edgerly, was driving a “non-owned automobile” at the time of the collision, so the plaintiff became liable under its policy.
The logic of the chancellor’s findings is impressive. His conclusion that Mrs. Edgerly’s son was a relative residing in her household is obviously correct. This being so, the remaining inquiry is whether the automobile involved in the collision was either an “owned automobile” or a “non-owned automobile” as those terms are defined in the policy. If the said automobile fell into either of these two categories, the plaintiff is liable under the policy. The said automobile was patently not an automobile owned by Mrs. Edgerly, the insured, nor owned by a relative residing in her household. This leaves the single question whether the said automobile qualifies as a "non-owned automobile” as defined in the policy. The said car did not fit in this category if it was “furnished for the regular use of either the named insured or any relative * * Since the said automobile was clearly furnished for the regular use of Mrs. Cone, the owner’s wife, the remaining question is whether she was a “relative” within the meaning of that term in the policy. The decisive finding of the chancellor is that Mrs. Cone was not a resident of Mrs. Edgerly’s household at the time of the collision. In reaching this conclusion, the chancellor points out that the living together of two families in the same house temporarily for reasons of convenience and economy does not merge them or make them one family and one household. He also invokes the long-established rule that ambiguous phrasing should be construed most strongly in favor of the insured and against the insurer.
*651 The inference that Mrs. Cone was not a resident of Mrs. Edgerly’s household and hence did not qualify as a “relative” of the latter within the meaning of that word as defined by the policy, strikes us as a reasonable inference from the evidence before the chancellor; but we also think that an equally reasonable inference is that Mrs. Cone was a resident of the household under the terms of the policy. Neither the chancellor nor this court, however, has the authority under the procedural rules governing summary judgments and decrees to adjudicate finally an issue of fact when the evidence is uncontroverted but is legally susceptible of two or more inferences of fact by a jury in actions at law or two or more inferences of fact by the chancellor in equity cases sitting as the trier of the facts after a full hearing on the merits. See Pan American Distributing Company v. Sav-A-Stop, Incorporated, 124 So.2d 753 (Fla.App.1960). The reason for this rule is that, when the evidence is susceptible of two or more inferences of fact, it cannot correctly be said that there is “no genuine issue as to any material fact” nor that the movant is entitled to a summary judgment or decree “as a matter of law” — two of the prerequisite conditions to the entry of such a judgment or decree under Rule 1.36 of the Florida Rules of Civil Procedure, 30 F.S.A.
The application of this doctrine to equity causes in which the chancellor sits as the trier of the facts is as vital as in cases at law where the jury is the trier of the facts. In the normal course of equity causes, the chancellor enters his final decree after a full opportunity has been afforded to all parties to present all their evidence in support of their positions and after a full argument by counsel. On the other hand, the chancellor is authorized to enter a summary decree under Rule 1.36 “if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law.” The summary procedure is thus not available where there exists a genuine issue as to inferences of material fact nor where the moving party is not entitled to a decree as a matter of law. The difference between the chancellor’s authority to enter summary decrees and his authority to enter final decrees on the| merits must be observed in the administration of justice. It is not just a matter of the chancellor’s “changing hats” — it’s a fundamental difference between two important procedures — each playing its role in the administration of justice in our courts.
In the case before us, we conclude that the chancellor erred in entering the summary decree appealed from, so that decree is reversed and the cause remanded for further proceedings consistent with the views set forth herein.
Reversed and remanded with directions.
WIGGINTON and RAWLS, JJ., concur.